## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

STRAUSS FARMS, INC.,

        Plaintiff,

    vs.                                    **Case No. 03-4046-RDR**

COMBS COMMODITIES, INC.,
J.A.K., INC. and BURLISON
GIN COMPANY, INC.,

        Defendants.

_____

### MEMORANDUM AND ORDER

    This case arises from a fire which took place inside a farm storage building several hours after almost 25 tons of cottonseed were dumped inside the building.  Plaintiff is the owner of the farm building.  Defendant Burlison Gin Company, Inc. ("Burlison") supplied the cottonseed which was sold to plaintiff.  This case is now before the court upon Burlison's motion for summary judgment and Burlison's motion to exclude expert testimony.

    The following uncontroverted facts are important to an understanding of both motions.

    On June 22, 2001 plaintiff purchased close to 25 tons of cottonseed to be used as feed for plaintiff's dairy cattle.  The cottonseed was supplied by Burlison and trucked to plaintiff's location by an independent trucking company.  The cottonseed shipment arrived on July 6, 2001.  At about 3:30 p.m. the

cottonseed was unloaded onto the concrete slab floor of the storage building while an employee of plaintiff, Travis Shuck, was present.  The cottonseed was pushed to the northwest corner of the building by a Bobcat loader with a metal bucket operated by Shuck.  Shuck did not notice any discoloration, smell, smoldering, smoking, moisture or anything out of the ordinary with regard to the load of cottonseed.  At 7:30 p.m., Shuck parked a tractor 15 to 20 feet away from the pile of cottonseed.  Again, he did not notice a problem with the cottonseed.  At approximately 4:10 a.m. the next morning, July 7, 2001, a fire was discovered in the storage building.

The state fire investigator stated in his report:

> Since no electrical or other mechanical causes for the fire could be located [in the area where the fire appears to have started], this investigator is going to list this fire as an undetermined fire, due to the fact that we are unable to specifically pinpoint the cause of the fire.  This investigator cannot, at this time, rule out the possibility that the cottonseed may have spontaneously combusted inside this metal building.

On April 1, 2001, approximately three months before plaintiff's fire, Burlison had a spontaneous combustion fire at a building where cottonseed was stored.  The cottonseed which was delivered to plaintiff came from the same building and the same body of cottonseed which was stored there on April 1st.

In Burlison's reply brief to the motion for summary

2

judgment, Burlison has listed additional allegedly uncontroverted material facts. This is improper. However, even if the court considered the additional "uncontroverted facts," the conclusions reached in this order would be unchanged.

Motion to exclude expert testimony of plaintiff's experts

Burlison has filed this motion to exclude the testimony of Dr. Andrew T. Armstrong and Dr. Ronald Wells under the principles of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), Kuhmo Tire Co. v. Carmichael, 526 U.S. 137 (1999) and FED.R.EVID.R. 702. The Tenth Circuit has discussed this court's "gatekeeper" function regarding expert testimony as follows:

> "Faced with a proffer of expert scientific testimony . . . the trial judge must determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." Daubert, 509 U.S. at 592. This gatekeeper function requires the judge to assess the reasoning and methodology underlying the expert's opinion, and determine whether it is scientifically valid and applicable to a particular set of facts. . . .
>   It is within the discretion of the trial court to determine how to perform its gatekeeping function under Daubert. . . . The most common method for fulfilling this function is a Daubert hearing, although such a process is not specifically mandated. . . . The district court may also satisfy its gatekeeper role when asked to rule on a motion in limine, on an objection during trial, or on a post-trial motion so long as the court has sufficient evidence to perform "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert, 509

U.S. at 597.

Goebel v. Denver and Rio Grande Western R.R. Co., 215 F.3d 1083, 1087 (10ᵗʰ Cir. 2000).  In this case, the court has carefully reviewed the exhibits filed with Burlison's motion.  We believe this review is sufficient to render a decision upon the motion to exclude without conducting an oral hearing.

**Armstrong**.  Dr. Armstrong has submitted a report which provides a general description of the process of spontaneous combustion.  Before making the report, Dr. Armstrong reviewed several statements regarding plaintiff's fire and several papers on the subjects of spontaneous combustion, cottonseed, and livestock feed.  The report concludes with this statement:

> Based on the information provided, the known chemical properties of the material and my professional training and experience, it is my opinion that cottonseed is prone to self-heating by both biological and chemical mechanisms that may result in spontaneous ignition.  The producers of cottonseed should take every precaution to avoid conditions that may lead to self-heating including, but not limited to:
>
> 1) Proper cool down of the cottonseed after the gin operation,
> 2) Proper moisture control,
> 3) Temperature monitoring, and
> 4) Careful monitoring of material during heating.

Burlison does not state any disagreement with the information and conclusions contained in Dr. Armstrong's report.  Nevertheless, Burlison insists that Dr. Armstrong's testimony be

4

excluded because:  1) the opinion is not based on facts or data specifically related to this case; and 2) Dr. Armstrong has not applied scientific principles or methods to the facts of this case.

FED.R.EVID. 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts.

Burlison concedes that Dr. Armstrong has the experience, training and education to render an expert opinion.  Since plaintiff contends that the fire in this case occurred as a result of spontaneous combustion, testimony regarding the process of spontaneous combustion could assist the trier of fact.  Rule 702 requires that the testimony be based on sufficient facts or data.  The proposed testimony appears to be based upon facts or data from respected and knowledgeable sources which have been read by Dr. Armstrong.  This is a reliable method of acquiring knowledge.  It is not asserted that Dr. Armstrong's opinions regarding spontaneous combustion are unreliable or unsound.  Therefore, we conclude the testimony satisfies the standards of Rule 702.

Burlison asserts that Dr. Armstrong's knowledge regarding spontaneous combustion is not specifically applied to the facts of this case.  That is not a requirement of Rule 702, <u>Daubert</u> or <u>Kuhmo</u>, however.  The 2000 Advisory Committee Notes to Rule 702 state:  "[I]t might . . . be important in some cases for an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case."  See also, 4 WEINSTEIN'S FEDERAL EVIDENCE § 702.02[2] (2004) ("Under Rule 702, parties may use expert witnesses to provide the trier of fact with an explanation of scientific or other principles that are relevant to the case and leave it to the trier of fact to apply those principles to the facts of the case.").  Therefore, the court shall reject the request to strike Dr. Armstrong's testimony.

**Wells**.  Dr. Wells has completed two reports in relation to this case.  In his first report, dated September 14, 2001, Dr. Wells stated that the fire in this case was most likely the result of spontaneous combustion of the cottonseed and that ignition probably occurred prior to the delivery of the cottonseed.  In a second report, dated March 22, 2004, Dr. Wells discussed the results of his tests of other potential accidental sources of ignition.  He continued to conclude:

It is my opinion that spontaneous combustion was the

only reasonable cause of the fire in the Strauss
building. Other potential accidental sources such as
electrical fault in the equipment, sparks, discarded
matches, or fireworks have been eliminated as
possibilities through testing, observations, and
analysis. The ignition tests revealed that any
ignition produced by sparks, matches, or fireworks did
not spread and went out quickly. The loader tests
revealed that any sparks that might have been produced
were of low energy and most likely would not have
ignited the cottonseed or the soybean meal.

Prior to making the first report, Dr. Wells observed and
photographed the site of plaintiff's fire. In addition, he
examined and photographed the machines inside the burned
building. He also looked at the feed material inside the
building and the electrical power supply. Dr. Wells further
indicated that he heard from an insurance adjuster of the
company that hired him that the report of the State Fire
Marshal's Office had ruled out an electrical cause for the fire.
Prior to making the second report, Dr. Wells reviewed
depositions, photographs and expert reports from Dr. Armstrong
and the expert for defendant Burlison, as well as one article
about spontaneous combustion and one article about feeding sheep
using cottonseed. He has not done any research, projects or
experiments relating to spontaneous combustion.

As with Dr. Armstrong, Burlison concedes that Dr. Wells has
the experience, training and education to render an expert
opinion. Burlison contends, however, that:

"Dr. Wells' opinions are not based on any scientific
facts or data and are not within the scope of any
special knowledge, skill, experience or training. Dr.
Wells' opinions are grounded on pure speculation, with
no scientific foundation or basis. Dr. Wells
admitted, after hours of questioning in his deposition
. . . that his opinions were based on 'common sense'
and not on any other objective criteria."

Doc. No. 66 at pp. 22-23.

The court disagrees with this contention. Dr. Wells'
opinions appear to be based largely upon his examination of the
site of the fire and the contents of the burned building.
Burlison does not assert that this is an unscientific or
unreliable means of investigating the cause of a fire if the
investigator has, as Burlison admits in this instance, the
education, training and experience to perform the investigation.

Dr. Wells' approach in this instance has been to reduce the
number of potential causes of the fire through an examination of
physical evidence and to consider the circumstantial evidence
relating to the cause of the fire. This seems to be a
reasonable approach. As one court has stated: "By the very
nature of a fire, its cause must often be proven through a
combination of common sense, circumstantial evidence and expert
testimony." Minerals & Chemicals Philipp Corp. v. S.S. Nat'l
Trader, 445 F.2d 831, 832 (2d Cir. 1971).

Dr. Wells' approach appears to have general acceptance in
the practice in the relevant field. It does not seem

significantly different, for example, from the approach of the
State Fire Marshal's Office.  It seems scientifically sound, and
we believe it satisfies Rule 702's reliability requirements.  We
note that "plaintiff need not prove that the expert is
undisputably correct or that the expert's theory is 'generally
accepted' . . . [i]nstead, the plaintiff must show that the
method employed by the expert in reaching the conclusion is
scientifically sound and that the opinion is based on facts
which sufficiently satisfy Rule 702's reliability requirements."
Mitchell v. Gencorp Inc., 165 F.3d 778, 781 (10th Cir. 1999)
(quoting Moore v. Ashland Chemical, Inc., 151 F.3d 269, 276 (5th
Cir. 1998)).

Burlison emphasizes that Dr. Wells referred to "common
sense" in support of one of his conclusions as he was giving his
deposition.   This "admission" is alleged as grounds to
disqualify his testimony.  We reject this argument.  While an
expert's opinion should not be admitted in instances where a
layperson's use of common sense would be as suitable to
determining an issue involved in a dispute (1972 Advisory
Committee Notes to FED.R.EVID. 702), this does not preclude an
expert from relying upon common sense to support a part of his
analysis.   Indeed, the reference to "common sense" in the
deposition appears to be in relation only to a part of Dr.

9

Wells' opinion which concerns the time required for spontaneous combustion in cottonseed.  Dr. Wells suggested that common sense indicated that the process required more than several hours. Deposition pp. 133-137.  Burlison's expert may agree with this conclusion.  Doc. No. 67, Exhibit G at p. 2.  We do not find that conclusion or the source for it's support to be grounds to exclude Dr. Wells' testimony.

Burlison also argues that Dr. Wells' testimony should be rejected because he failed to verify information provided to him initially from the insurance adjuster, failed to perform a truly independent investigation, failed to gather documentation to support his conclusions, and failed to exclude or explore other potential causes of the fire.  These arguments are not in the vein of a Rule 702 or Daubert challenge.  We believe they go more to the weight of Dr. Wells' testimony rather than to its admissibility.  After considering these arguments, we shall reject them as grounds to exclude Dr. Wells' testimony.

Before leaving the subject of Daubert, however, we must inquire as to whether the "proposed testimony is sufficiently 'relevant to the task at hand.'"  Bitler v. A.O. Smith Corp., 391 F.3d 1114, 1121 (10th Cir. 2004) (quoting, Daubert, 509 U.S. at 597).

> A trial court must look at the logical relationship between the evidence proffered and the material issue

that evidence is supposed to support to determine if it advances the purpose of aiding the trier of fact. Even if an expert's proffered evidence is scientifically valid and follows appropriately reliable methodologies, it might not have sufficient bearing on the issue at hand to warrant a determination that it has relevan[ce] . . .

Bitler, 391 F.3d at 1121.

The cause of the fire in this case is obviously a material issue.  Dr. Wells' testimony has a tendency to make the cause of the fire more or less probable than it would be without his testimony.  Therefore, under the definition of "relevance" provided under FED.R.EVID. 401, as well as our view of the Daubert case, we believe the proposed testimony is sufficiently relevant to be admitted.

For the above-stated reasons, the court shall deny Burlison's motion to exclude the expert testimony of plaintiff's experts.

Motion for summary judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  FED.R.CIV.P. 56(c). A "genuine issue of material fact" exists if a reasonable jury could return a verdict for the nonmoving party; if the evidence

is such that one party must prevail as a matter of law, then summary judgment is proper. Anderson v. Liberty Lobby, 477 U.S. 242, 248 & 251-52 (1986). The moving party has the initial burden of proving the absence of a genuine issue of material fact. This burden can be met by showing that there is a lack of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. Anderson, 477 U.S. at 256. In doing so, the nonmoving party cannot rest on mere allegations or denials, but must set forth specific facts showing that there is a genuine issue of fact for trial. Id. In examining the record presented by both sides, the court considers it and all reasonable inferences from it in the light most favorable to the nonmoving party. Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998).

**Negligence.**

In general, plaintiff claims that the fire was caused by spontaneous combustion which occurred because some of the cottonseed Burlison supplied for delivery to plaintiff was too moist. One of plaintiff's three theories of recovery is negligence. To recover upon a theory of negligence, a plaintiff

12

must prove the existence of a duty, breach of that duty, injury and a causal connection between the duty breached and the injury suffered.  <u>Nero v. Kansas State University</u>, 861 P.2d 768, 770 Syl. 1 (1993).

In the instant case, as Burlison alleges, there is an absence of evidence of a breach of duty.  Plaintiff asserts in the brief in opposition to summary judgment that a jury can infer negligence from the "fact" of spontaneous combustion and from the fact that Burlison had a fire in its own storage facility.  Doc. No. 71 at p. 11.  We reject these assertions.

While there may be sufficient evidence in the record before the court for a reasonable jury to find spontaneous combustion, the court does not believe on these facts that a breach of a duty of care can be inferred from spontaneous combustion in the manner of res ipsa loquitur.  See <u>Querry v. Montgomery Ward & Co.</u>, 535 P.2d 928, 932-33 (Kan. 1975); <u>Bias v. Montgomery Elevator Co.</u>, 532 P.2d 1053, 1055-56 (Kan. 1975); <u>Trent v. Sellers</u>, 563 P.2d 1106, 1109-10 (Kan.App. 1977).  Nor do we believe that a reasonable jury could infer a breach of a duty of care from the fact of the prior fire at Burlison's storage facility.  This appears to be another attempt to apply res ipsa loquitur to an incident; this time one which is removed in time and place from the fire in question.  We reject it, particularly

13

in the absence of any evidence that the types of practices and precautions which Burlison used were unsafe or unreasonable.

Plaintiff also has made reference to evidence that Burlison installed a different means for checking the temperature of cottonseed in storage after the fires referred to in this case. We do not believe this is adequate proof of negligence. To the extent that this is evidence of subsequent remedial conduct, it is not admissible. But, even if it was admissible, it does not demonstrate, and there is no other evidence which demonstrates, that the process of managing the cottonseed prior to the fires was unreasonable or violated a duty of care.

Therefore, the court shall grant summary judgment against plaintiff's negligence claim.

**Implied warranty of fitness for a particular purpose.**

Kansas provisions regarding an implied warranty of fitness for a particular purpose (K.S.A. 84-2-315) do not apply to situations in which the product in question was to be used for its ordinary purpose. International Petroleum Services, Inc. v. S & N Well Service, Inc., 639 P.2d 29, 37 (Kan. 1982); Carson v. Chevron Chemical Co., 635 P.2d 1248, 1257 (Kan.App.2d 1981). The cottonseed in this case was to be used for its ordinary purpose. This is not disputed. Therefore, summary judgment shall be granted against plaintiff's claim for breach of implied

14

warranty of fitness for a particular purpose.

**Implied warranty of merchantability.**

Burlison contends that plaintiff's claim of breach of implied warranty of merchantability should be dismissed because plaintiff cannot prove that there was a defect in the cottonseed when it left Burlison's care and custody or that the alleged defect caused the fire. After careful consideration, the court shall reject these contentions.

Plaintiff has evidence that the fire was caused by spontaneous combustion of the cottonseed. This is the testimony of Dr. Wells who refers to where the fire originated, the elimination of other potential causes, and circumstantial evidence. This is sufficient to raise a jury issue as to whether the cottonseed supplied by Burlison caused the fire. See <u>Dieker v. Case Corp.</u>, 73 P.3d 133, 145-147 (Kan. 2003); <u>Farmer's Ins. Co. v. Smith</u>, 549 P.2d 1026, 1034 (Kan. 1976); <u>Lane v. Redman Mobile Homes</u>, 624 P.2d 984, 988-90 (Kan.App. 1981); see also, <u>Weir v. Federal Ins. Co.</u>, 811 F.2d 1387, 1392 (10th Cir. 1987); <u>American Family Mut. Ins. Co. v. Sears, Roebuck & Co.</u>, 998 F.Supp. 1162, 1165-66 (D.Kan. 1998). We also believe the circumstantial evidence alone is adequate to produce a jury issue as to whether the alleged defect in the cottonseed was present when the cottonseed left Burlison's control.

For these reasons, the court shall deny defendant's motion for summary judgment as to the breach of warranty of merchantability claim.

Conclusion

Defendant Burlison's motion to exclude testimony is denied. Defendant Burlison's motion for summary judgment is granted in part and denied in part as explained in this order.

**IT IS SO ORDERED.**

Dated this 29th day of March, 2005 at Topeka, Kansas.


s/Richard D. Rogers
United States District Judge

16